866 F.2d 691
 CHILD, an infant who sues by parent and next of friend
parent, Plaintiff- Appellee,
v.
Robert R. SPILLANE, in his official capacity as Super.
Fairfax County, Virginia, Public Schools; School
Board of Fairfax County, Virginia,
Defendants-Appellants.
 No. 88-2072.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 3, 1988.
Decided Jan. 26, 1989.
Rehearing and Rehearing In Banc Denied March 20, 1989.
 
 Thomas J. Cawley (Grady K. Carlson, Stephen M. Sayers, Fairfax, Va., William H. Wright, Jr., Hunton & Williams, Richmond, Va., on brief), for defendants-appellants.
 Kenneth Edward Labowitz (Fagelson, Schonberger, Payne and Arthur, Alexandria, Va., Frank M. Feibelman, Wright and Associates, on brief), for plaintiff-appellee.
 Before WIDENER, MURNAGHAN, and WILKINS, Circuit Judges.
 WILKINS, Circuit Judge:
 
 
 1
 Dr. Robert R. Spillane and the Fairfax County School Board (Defendants) appeal the district court award of attorney's fees and costs in favor of the Child, an infant who sues anonymously by her next friend and Parent. We vacate the district court award because the Child was not a prevailing party as required by section 505(b) of the Rehabilitation Act of 1973. 29 U.S.C.A. Sec. 794a(b) (West 1985).
 
 I.
 
 2
 The Child, who suffers from Acquired Immune Deficiency Syndrome (AIDS), was removed from kindergarten class on November 4, 1987. The Parent was informed on that date that the Fairfax County Health Department had recommended the Child's temporary exclusion from school pending a review of her medical records.
 
 
 3
 The Parent and the Child's attending physician, Dr. Judy Vincent, met with the school principal on November 10, 1987. The Parent and Dr. Vincent were requested to provide all available medical records to the school so that the Health Department could determine whether the Child's attendance at kindergarten would pose any risks to other students and school employees.
 
 
 4
 The medical records were not received by school officials until Tuesday, December 15, 1987. Dr. Spillane, Division Superintendent of the Fairfax County Public Schools, immediately dispatched the records to the Health Department for its review. The Health Department recommended that a medical committee be formed to review the case and to evaluate the risks posed by the Child's continued attendance at school.
 
 
 5
 Dr. Spillane, by hand-delivered letter on December 22, 1987, informed the Child's attorneys of the Health Department's recommendation. In this letter, Dr. Spillane stated that the medical committee was prepared to meet on December 29, 1987, or on another day suitable to the Child's attorneys and physician.
 
 
 6
 Also on December 22, Defendants' attorneys consulted by telephone with counsel for the Child. During these conversations, Defendants' attorneys emphasized that the immediate filing of a lawsuit would be premature since an expedited process was already in motion to review the Child's medical records. Defendants' attorneys offered to convene the medical committee as early as the next day, December 23, 1987, and they also represented that should the School Board deny the Child's readmission to school, they would agree to an expedited trial if the Child should then institute a lawsuit. Despite these assurances from Defendants' counsel, the Child's attorneys filed suit that day under section 504 of the Rehabilitation Act, 29 U.S.C.A. Sec. 794 (West 1985), primarily seeking the Child's readmission to school. This action was commenced on December 22, 1987, one day prior to the beginning of the school's Christmas vacation.
 
 
 7
 The medical committee advanced its meeting to December 24, 1987. Following the hearing the Director of Health Services for the Health Department recommended that the Child be allowed to return to school since no significant risk to others was perceived. The School Board convened on January 2, 1988 and unanimously accepted a recommendation by Dr. Spillane that the Child be allowed to return to school after the Christmas holiday.
 
 
 8
 After returning to kindergarten, the Child moved for summary judgment, and alternatively for dismissal of the lawsuit without prejudice due to mootness. Accompanying this motion was an application for attorney's fees submitted by counsel for the Child. The total fee requested was $17,058.44, with approximately one-third of this amount attributed to time spent in interviews with news media and another one-third attributed to preparing the fee petition. The district court dismissed the action without prejudice and subsequently awarded attorney's fees and costs in the amount of $15,380.99 to counsel for the Child.
 
 II.
 
 9
 The Rehabilitation Act provides, in pertinent part, that otherwise qualified handicapped individuals shall not be discriminatorily excluded from activities receiving federal financial assistance. "Prevailing parties" under the Act are permitted, in the discretion of the district court, an award of attorney's fees. 29 U.S.C.A. Sec. 794a(b).[1]
 
 
 10
 In order to qualify as a prevailing party, it is not necessary that a plaintiff obtain relief solely in the manner of a formal judgment. Hewitt v. Helms, 482 U.S. 755, ----, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654, 661 (1987). A party may prevail by virtue of a voluntary action by the opposing party through settlement or a consent decree. Id.; see also Disabled in Action v. Pierce, 789 F.2d 1016, 1019 (3d Cir.1986). The fact that a settlement has been reached as compared to a formal judgment does not mandate a stricter test for entitlement. Pierce, 789 F.2d at 1019. However, an applicant must demonstrate that a "causal connection [exists] between the relief obtained and the litigation." Id. In order to establish this nexus, the applicant must show that the lawsuit " 'contributed in a significant way' to the winning of benefits or relief from the 'factual/legal condition that the fee claimant has sought to change.' " Mayor of Baltimore, 685 F.2d at 885 (quoting Bonnes v. Long, 599 F.2d 1316, 1319 (4th Cir.1979)). "Fees may be awarded even where a party's efforts have merely 'served to a limited extent to expedite the planning and achievements gained.' " Id. at 886 (quoting United Handicapped Federation v. Andre, 622 F.2d 342, 348 (8th Cir.1980)).
 
 
 11
 Here, Defendants argue that the Child's filing of a lawsuit did not facilitate the readmission of the Child to kindergarten. Defendants assert that the medical committee was already scheduled to meet and that the filing of the lawsuit did not serve to expedite the hearing, as evidenced by the December 22 letter from Dr. Spillane to the Child's attorneys. In that letter, which the Child's attorneys admitted receiving prior to the commencement of the lawsuit, Dr. Spillane informed counsel that the medical committee was scheduled to convene on December 29, 1987. The letter also expressly provided that another date and time could be arranged for the convenience of the Child's attorneys and physician.
 
 
 12
 The district court found that "as a practical matter the efforts of counsel for the plaintiff and the law suit [sic] evidenced by this action, contributed to a significant degree to the relief obtained by the plaintiff and the timing thereof." This finding is not supported by the series of events which surrounded the filing of the lawsuit. The record establishes instead that the filing of the lawsuit did not contribute to or expedite the readmission of the Child to kindergarten. Once the Defendants received the medical information they had requested from the Parent and the Child's physician, the decision to readmit the Child was made in a most expedient manner. The only evidence of less than diligent action in the record involves the in excess of one month delay by the Child in transmitting the medical records to the Defendants.
 
 
 13
 As stated by the Third Circuit, "[a] totally frivolous lawsuit which results in the defendant doing no more than it was already committed to do will never satisfy [the causal connection]" necessary for an award of attorney's fees. Pierce, 789 F.2d at 1019. Although this lawsuit may not have been frivolous in substance, the institution of the suit on December 22 was unnecessary since the Defendants had already initiated the process for determining whether the Child was to be readmitted on an expedited basis. Moreover, the decision to readmit would have come even sooner had the Child made timely delivery of the requested medical records.
 
 
 14
 A key difference is evident here when compared with the Third Circuit case of Pierce. There, the plaintiff organization for disabled persons brought an action against the government pursuant to the Rehabilitation Act in order to require installation of access ramps for handicapped persons in an office building. The suit was settled and the organization subsequently moved for attorney's fees. The district court denied the fee petition, finding, among other grounds, that the organization was not a prevailing party since the "litigation was unnecessary." The Third Circuit reversed, holding that "the lawsuit caused the government to provide access for the handicapped ... and to make other services and facilities accessible to the handicapped." Pierce, 789 F.2d at 1020. The government had conceded that prior to the filing of the lawsuit it had decided not to provide some of the relief sought by the organization. That concession is in stark contrast to the situation here, where there is nothing in the record to dispute the Defendants' assertion that the relief sought would have been provided absent the filing of the lawsuit on the day the medical committee meeting was arranged. The hearing process to determine readmission was already in place during the vacation holidays. There was no necessary or compelling reason to file on December 22. The uncontradicted affidavits of the School Board's Vice-Chairman and the Superintendent of the Fairfax County Public Schools demonstrate that the decision of the School Board was to be governed entirely by the medical advice given by the Health Department. If the Health Department agreed with the Child's physician that no significant health risk to others was presented, the Child's readmission was assured. This was a medical decision and the School Board was looking to the Health Department for medical advice. The filing of this suit a couple of days before the medical experts met and delivered their opinion had no effect on it. It did not hasten a decision or contribute to its favorable nature.
 
 III.
 
 15
 The district court also found that the filing of the lawsuit triggered "the initiation of positive steps to enact a policy by the Fairfax County School Board dealing with the admission to the school system of children suffering from AIDS." The Child relies upon the enactment of a policy to support her contention that she is a prevailing party for purposes of attorney's fees. However, the Rehabilitation Act does not require that the School Board enact such a policy and there is no evidence supporting the assertion that the Defendants acted unreasonably as to this particular plaintiff.
 
 IV.
 
 16
 The district court clearly erred in finding that the institution of the lawsuit facilitated the return of the Child to kindergarten. It also clearly erred in finding that the Child prevailed because the action initiated the establishment of a county-wide policy dealing with students afflicted with AIDS. For these reasons, the district court award of attorney's fees in favor of the Child is vacated. Although we question the appropriateness of awarding attorney's fees for time in news conferences and interviews with the news media, we need not address this issue since the Child was not a prevailing party.
 
 
 17
 VACATED.
 
 MURNAGHAN, Circuit Judge, dissenting:
 
 18
 I respectfully dissent. The district court did not clearly err in finding that the Child's lawsuit contributed to her readmission to kindergarten. She was, therefore, a prevailing party. However, instead simply of affirming in toto, I would vacate the award of attorney's fees and remand for a possible recalculation because the district court failed to explain adequately its reasons for granting fees for certain legal work performed after the Fairfax County School Board had voted to readmit the Child.
 
 I. Prevailing Party Status
 A. Readmission of Child
 
 19
 The majority fails to give proper deference to the district court's factual finding that the Child's lawsuit contributed to or at least helped to expedite the School Board's decision to readmit her to kindergarten. Although the majority has acknowledged that it is bound to a "clearly erroneous" standard of review, such acknowledgment here represents mere lip service. In reality, the majority has substituted its judgment for that of the district court on a factual issue, and in the process has violated the clear mandate of the Supreme Court.
 
 
 20
 The "clearly erroneous" standard of review is a highly deferential one:
 
 
 21
 If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.... This is so even when the district court's findings do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.
 
 
 22
 Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511-12, 84 L.Ed.2d 518 (1985) (citations omitted). Such deference is particularly appropriate where, as here, the district judge must rely on his or her intimate familiarity with the lawsuit's progression, the conduct of the parties and their counsel, and events in the local community, including public reaction to the suit, to make the difficult determination of whether a causal link existed between the suit and the defendant's behavior. Appellate judges, who view the case from afar, are simply not as well equipped as a district judge to make the difficult judgment call as to whether a lawsuit contributed to a defendant's decision.
 
 
 23
 The record contains sufficient evidence from which the district court could reasonably infer that the filing of the lawsuit contributed in a significant way to the School Board's decision on January 2, 1988 to readmit the Child to kindergarten. The majority opinion ignores the storm of negative publicity directed at the Fairfax County school system following the filing of the lawsuit. The school system and particularly Robert Spillane, the county school superintendent, were the subject of negative press coverage in the Washington, D.C. metropolitan area and across the country. In the way of news media, the counsel for the Child were inevitably caught up in the matter. This Circuit has recognized the propriety of inferring a causal link between a lawsuit and the defendant's behavior where the suit has given rise to widespread negative publicity directed at the defendant. See DeMier v. Gondles, 676 F.2d 92, 93 (4th Cir.1982). The situation in DeMier was remarkably similar to the controversy in which the Fairfax County School Board and Superintendent Spillane found themselves embroiled:
 
 
 24
 According to the numerous exhibits of newspaper articles and editorials submitted by appellees, this suit caused considerable publicity, both locally and nationwide, and "increased political pressure" regarding the policy. The conclusion appears inescapable that even if other complaints contributed to the change in policy, this suit was a major contribution.
 
 
 25
 Id. In the instant case, the School Board appeared to act with a sense of urgency in the face of the negative publicity. Eleven days after the filing of the suit, and following more than a week of negative press coverage, the Board met on a Saturday--on New Year's weekend, no less--to vote to readmit the Child to school. The district court could plausibly infer from the unusual meeting time that the Board was urgently trying to quell the storm of controversy that the lawsuit had provoked.
 
 
 26
 Rarely will plaintiffs be able to produce a "smoking gun" that conclusively proves the defendants' motivation for their behavior. Evidence directly pertaining to a defendant's motivation is often exclusively within that party's control and quite difficult, if not impossible, for the plaintiff to obtain. See Ortiz de Arroyo v. Barcelo, 765 F.2d 275, 282 (1st Cir.1985), citing Nadeau v. Helgemoe, 581 F.2d 275, 281 (1st Cir.1978); Harrington v. DeVito, 656 F.2d 264, 267 (7th Cir.1981), cert. denied, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982); Comment, Attorney's Fees in Moot Cases, 49 U.Chicago L.Rev. 819, 835 (1982). Cf. Commissioners Court of Medina County v. United States, 683 F.2d 435, 442 (D.C.Cir.1982).
 
 
 27
 Accordingly, numerous circuits have recognized that the chronology of events, while not dispositive, will often be an important factor from which district courts may properly infer causation. See Ortiz, 765 F.2d at 282; Morrison v. Ayoob, 627 F.2d 669, 672 (3rd Cir.1980), cert. denied, 449 U.S. 1102, 101 S.Ct. 898, 66 L.Ed.2d 828 (1981); Heath v. Brown, 858 F.2d 1092, 1094 (5th Cir.1988); Harrington, 656 F.2d at 267; United Handicapped Federation v. Andre, 622 F.2d 342, 347 (8th Cir.1980); Sablan v. Department of Finance, 856 F.2d 1317, 1326 (9th Cir.1988); Fields v. Tarpon Springs, 721 F.2d 318, 322 (11th Cir.1983); Miller v. Staats, 706 F.2d 336, 341 n. 32 (D.C.Cir.1983). See also, NAACP v. Detroit Police Officers Ass'n, 696 F.Supp. 1145, 1150 (E.D.Mich.1988). The filing of a lawsuit, followed by an outburst of negative publicity directed at the defendants, and followed in turn by the defendants' relatively rapid acquiescence to the plaintiff's demands, will be strong evidence of a causal link.
 
 
 28
 The majority tries to discredit the inference drawn by the district court by presenting a selective version of the facts to convey the misimpression that the Child's quick readmission to kindergarten was virtually assured before the lawsuit was filed. For example, the majority makes much of the fact that prior to the filing of the suit Fairfax County decided to form a medical committee to evaluate the possible health risks posed by the Child. That fact in no way makes the district court finding clearly erroneous. First of all, it is far from clear that the decision to establish the committee was made independently of the threat of legal action. Three days prior to the decision to form the committee, school officials received a letter from the Child's attorney containing a thinly veiled threat of a lawsuit if the Child were not promptly readmitted to kindergarten.[1] Secondly, there was no evidence at the time of the filing of the lawsuit that the committee was likely to recommend readmission. Furthermore, there is no objective support for the majority's assertion that if the committee "agreed with the Child's physician that no significant health risk to others was presented, the Child's readmission was assured."
 
 
 29
 Unlike the majority, I give little weight to affidavits from Superintendent Spillane and the School Board's vice-chairperson stating that they agreed to the Child's readmission solely because of the advice of the medical review committee and that the lawsuit had nothing to do with their decision. Few plaintiffs would recover attorneys fees if defendants could defeat a fee application merely by filing affidavits denying that the lawsuit had an impact on their behavior. "[D]efendants, on the whole, are usually rather reluctant to concede that the litigation prompted them to mend their ways." Heath, 858 F.2d at 1094, quoting Posada v. Lamb County, 716 F.2d 1066, 1072 (5th Cir.1983).[2]
 
 
 30
 Contrary to the majority's suggestion, it was not unreasonable for the plaintiff to have believed that a lawsuit was necessary, notwithstanding the defendants' promises to convene the medical review committee. The evidence suggests that the plaintiffs could reasonably fear that Superintendent Spillane might resist readmission of the Child even if the medical evidence demonstrated no health risks. Spillane had been quoted in the press as saying that no one with AIDS would ever be admitted to Fairfax County schools. In fact, upon hearing of the Child's lawsuit, Spillane was quoted by the press as saying that he would not readmit the Child because medical authorities could not reassure him that the girl would not endanger other pupils. Perhaps Spillane was misquoted. Nonetheless, the mere fact that such views were attributed to Spillane and widely publicized would understandably raise doubts among the Child's attorneys about whether the Child would be allowed to return to school without a legal battle.
 
 
 31
 Furthermore, there is no evidence that the plaintiff was ever assured prior to filing suit that the School Board would reach a decision on readmission before classes resumed January 4, 1988. For all that the Child's attorneys knew, deliberations within the school system might drag on for weeks or even months, during which time the Child would irretrievably be deprived of formal education. Although the plaintiff was informed that the medical review committee could meet as early as December 23, 1987, the plaintiff was apparently never told how long the committee would take to make a recommendation to Superintendent Spillane or how long Spillane and the School Board would take to act on that advice.
 
 
 32
 In conclusion, the district court permissibly inferred from the available facts that the Child's lawsuit contributed in a significant way to her readmission to kindergarten or at least to an acceleration of her return. The defendants have pointed to no objective evidence demonstrating that the district court clearly erred in finding such a causal connection. That finding is sufficient to make the Child a prevailing party for purposes of collecting attorney's fees pursuant to Section 505(b) of the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794a(b).
 
 B. Enactment of AIDS Policy
 
 33
 I agree with the majority that the School Board's consideration of an AIDS policy was insufficient by itself to make the Child a prevailing party. However, I disagree with the majority's method of reaching that conclusion. The majority takes the position that as a matter of law a school system cannot be forced to enact an AIDS policy. The Court decides that important issue unnecessarily and in an off-hand manner without benefit of briefing by the parties. It is not at all clear to me that a court could not use its equitable powers in certain circumstances to force a school system to adopt an AIDS policy to remedy a violation of the Rehabilitation Act.
 
 
 34
 The Court could reach its intended result merely by holding that as a matter of law the Child did not prevail on the AIDS policy issue because the School Board had not yet adopted the policy when the lawsuit was dismissed. Therefore, the Child legally obtained no benefit in regards to the policy.
 
 
 35
 Of course, such a result in no way changes my conclusion that the Child was a prevailing party entitled to attorney's fees by virtue of the district court's finding that the lawsuit contributed to the Child's readmission to kindergarten.
 
 II. Calculation of Fee Award
 
 36
 The district court's calculation of attorney's fees must be upheld absent an abuse of discretion. Vaughns v. Board of Education, 770 F.2d 1244, 1245 (4th Cir.1985). I find no abuse of discretion in most aspects of the award, but I would vacate and remand for a full explanation in one respect, namely, the reasons for compensating legal work performed after the School Board agreed to readmit the Child. If the district court found on remand that such work did not contribute to the Child's readmission, it should recalculate the fee award accordingly.
 
 
 37
 The defendants contend that the district court erred in granting attorney's fees for time spent talking to members of the press and for the effort expended in preparing the fee application. Neither award represents an abuse of discretion.
 
 A. Press Conferences and Media Interviews
 
 38
 The Court should not establish an absolute rule forbidding the award of attorney's fees for time spent with the press. District judges should, however, be reluctant to grant such awards in the average case for fear that they will provide incentives for lawyers to try cases in the newspapers and other news media when their time would be better spent in preparing for the courtroom. Nonetheless, exceptional cases will arise from time to time involving issues of such vital public concern that lawyers will find it necessary to spend time responding to reporters' questions. In those situations, a district court will have discretion to award attorney's fees for time reasonably spent communicating with the news media.
 
 
 39
 Here, we have such an exceptional case. Few issues generate as much public controversy or implicate the public's interest as much as the question whether children with AIDS should be permitted to attend public schools. We have seen such AIDS cases, including the one before us now, capture nationwide attention. In such a controversial atmosphere, the lawyers for young AIDS victims will necessarily be called upon to deal with the news media.
 
 
 40
 When handled responsibly, a lawyer's contact of that nature can serve a valuable function in an AIDS case. The lawyer can assume an educating role, referring the public (through the media) to responsible medical experts' views on the risks and methods of AIDS transmission. The attorney (with the client's consent) also may feel a need to inform the public of certain aspects of the child's behavior that could affect the risks of transmission, such as whether the child is toilet trained or bites other children. Such information supplied by the lawyer may serve to quell the hysteria that often surrounds AIDS cases, thereby lessening parental opposition to the child's return to school and hastening a satisfactory resolution of the dispute.
 
 
 41
 A lawyer's contact with the media may also help to protect the child's privacy. If an attorney were to refuse to supply information to the news media, reporters might attempt direct contacts with the child herself or with her parents in an attempt to obtain the information. Reporters who are kept well informed by the attorney may be more willing to respect the privacy of the child and her parents.
 
 
 42
 I am fully aware that awarding attorney's fees for time spent with the news media carries the potential for abuse. But I am confident that district judges, who have the opportunity to observe lawyers' behavior at close range, can guard against such abuse by separating the legitimate and necessary press contacts from the unwarranted publicity stunts.
 
 
 43
 The district court here did not abuse its discretion in awarding attorney's fees for time spent with the press and other news media prior to the School Board's decision to readmit the Child.[3] There is ample evidence to support the district court's finding that the communication with the media and the resulting publicity contributed to a resolution of the controversy. Furthermore, there is no evidence that the Child's attorneys spent an unwarranted amount of time in press conferences or interviews. In fact, it appears that much of the media focus on the Child's attorneys arose not from their own publicity efforts but rather from Superintendent Spillane's press conference and the controversial remarks attributed to him by the press.
 
 B. Preparation of Fee Application
 
 44
 The district court did not abuse its discretion in awarding fees for 22 hours that the Child's counsel spent in preparing the application for attorney fees. This Circuit has recognized that a litigant may recover attorney's fees for time spent in preparing a fee application. See Daly v. Hill, 790 F.2d 1071, 1080 (4th Cir.1986).
 
 
 45
 The amount approved by the district court falls within the range of reasonableness. The district court did not merely rubberstamp the plaintiff's request. Instead, the court reduced the plaintiff's request from nearly 27 hours to 22 on the grounds that the law on the definition of "prevailing party" was "fairly settled" in the Fourth Circuit. I find no abuse of discretion.
 
 C. Work After January 2, 1988
 
 46
 Included in the attorney's fee award is well over $2,000 for activities (other than preparation of the fee application) that took place after the School Board voted on January 2, 1988 to readmit the Child. The district court failed to explain adequately how the work after January 2 contributed to the Child's return to school. For that reason, I would vacate the fee award and remand for further explanation and a possible recalculation of the fees.
 
 
 47
 The activities performed after January 2 may have contributed in a significant way to the Child's return to kindergarten. Even though the School Board voted January 2 to readmit the Child, it is not clear from the record whether the board allowed her immediate return to class following the vote, or instead, delayed the reentry to a later date. It is also unclear whether the Board imposed any conditions on the Child's return that the girl's parents might have found objectionable. I would have the district court make a factual inquiry into such matters to determine whether any work performed by the Child's attorneys after January 2, 1988 contributed in a significant way to the obtaining of a benefit on her behalf.
 
 III. Conclusion
 
 48
 The district court did not clearly err in finding that the Child's lawsuit contributed in a significant way to the School Board's decision to readmit her to kindergarten. Therefore, the Child must be considered a "prevailing party" eligible for attorney's fees.
 
 
 49
 I find no abuse of discretion in awarding fees for the effort the Child's attorneys expended in preparation of the fee application or for time spent working on the case prior to January 2, 1988, including time in press conferences and one-on-one interviews with news reporters. As for other work performed after January 2, 1988, the record is inadequate to allow me to decide whether there was abuse of discretion in the awarding of fees. Accordingly, I would vacate the fee award and remand for further explanation of the reasons for awarding fees for work performed after January 2, 1988. If the district court were to find that any of the work after January 2 did not contribute in a significant way to the Child's return to school, a recalculation of the fee award would be in order.
 
 
 
 [1]
 "Prevailing party" in the Rehabilitation Act has been given the identical meaning as that interpreted in the Civil Rights Attorney's Fees Awards Act, 42 U.S.C.A. Sec. 1988 (West 1981). See Disabled in Action v. Mayor of Baltimore, 685 F.2d 881, 885 n. 4 (4th Cir.1982)
 
 
 [1]
 Although the letter never explicitly stated that a lawsuit would be filed, it did remind school officials of their legal duty under the Rehabilitation Act of 1973, 29 U.S.C. Sec. 794, and warned that "[u]nless I hear from you by Monday, December 21, 1987 that [the Child] is readmitted to school I will proceed to take further action to gain her readmittance."
 
 
 [2]
 Even should I give weight to the affidavits, they would establish only that the superintendent and one school board member had made their decisions without regard to the lawsuit. Neither person could speak for the other School Board members who voted to readmit the Child. Affidavits must be made on personal knowledge, Fed.R.Civ.P. 56(e), and neither Superintendent Spillane nor the vice chairperson could readily, and without resort to hearsay, have personal knowledge of others' subjective motivation
 
 
 [3]
 As I explain in Section II.C., infra, the record is inadequate to determine whether the district court abused its discretion in awarding fees for press interviews and other activities performed after January 2, 1988, the date on which the Fairfax County School Board voted to readmit the Child to kindergarten. Accordingly, I would vacate the fee award and remand for further explanation from the district court