Jeffory S. COMBS, by his mother and next friend, Teresa COMBS, Plaintiff–Appellant,

and

Teresa Combs, Plaintiff,

v.

SCHOOL BOARD OF ROCKINGHAM COUNTY, Defendant–Appellee,

and

David L. Andes, Superintendent; Fred Kennon, Director of Special Education; Gary Lineweaver, Member of School Board in his official capacity; C. Eugene Lantz, Member of School Board in his official capacity; Frederick Eberly, Member of School Board in his official capacity; Marsha Blay, Member of School Board in her official capacity; Bobby W. Necsary, Member of School Board in his official capacity, Defendants.

No. 92–2292.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 27, 1993.

Decided Feb. 2, 1994.

**ARGUED:** Roger Allen Ritchie, Roger Ritchie & Partners, P.L.C., Harrisonburg, VA, for Appellants. Douglas Leigh Guynn, Wharton, Aldhizer & Weaver, Harrisonburg, VA, for Appellee. **ON BRIEF:** Jennifer E. Kirkland, Wharton, Aldhizer & Weaver, Harrisonburg, VA, for Appellee.

Before RUSSELL and WILLIAMS, Circuit Judges, and SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.

## OPINION

WILLIAMS, Circuit Judge:

The question before us is whether

Jeffory Combs ("Combs")[1] may recover attorneys' fees as the prevailing party in an action brought under the attorneys' fees provision of the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. §§ 1400–1485, against the School Board of Rockingham County ("School Board"). In administrative proceedings the School Board's actions were deemed to be in accordance with the Act, but the School Board later made some changes that comported with Combs' demands. We agree with the district court that Combs is not a "prevailing party" and is therefore not entitled to an award of fees under the Act.

## I.

The IDEA[2] sets forth a comprehensive scheme which requires states that receive federal funds for education of the handicapped to provide such children with a "free appropriate public education." 20 U.S.C.A. § 1412(1) (West Supp.1993).[3] The Act requires that schools establish an individualized educational program ("IEP") for each handicapped child, review it annually with the child's parents or guardians, and revise it when appropriate. 20 U.S.C.A. § 1414(a)(5) (West Supp.1993). The Act guarantees to the parents of such children the right to challenge the appropriateness of the IEP in an administrative hearing, and provides subsequent judicial review. *See* 20 U.S.C.A. § 1415 (West Supp.1993); *Dellmuth v. Muth,* 491 U.S. 223, 225, 109 S.Ct. 2397, 2398, 105 L.Ed.2d 181 (1989); Va.Code Ann. §§ 22.1–

213 to –219 (Michie Supp.1993) (adopting procedures in accordance with the Act).

Shortly after he was born to Teresa Wine Combs, Jeffory Combs suffered seizures which resulted in brain damage,[4] leaving him handicapped within the meaning of the IDEA. 20 U.S.C.A. § 1401(a)(1)(A) (West Supp.1993). From the age of two, the Rockingham County School District educated Jeffory in his home through its Homebound Program. At age 14, Jeffory began attending schools; he was 18 at the time this action commenced.[5] In addition to attending school, Jeffory enjoyed outside activities like horseback riding, travelling, and shopping at the mall. Now 23, he maneuvers only with assistance, and while he can make sounds, his communications are intelligible only to those who know him well.

Jeffory's mother, who is in charge of his care, had no quarrel with the School System's placement and treatment of Jeffory until the 1988–89 school year. In May 1988, the School District had the Medical College of Virginia conduct an independent evaluation of Jeffory to determine what education might be most appropriate. In response to those tests, the School District put into effect an IEP for the 1988–89 school year which placed Jeffory in a two-day-per-week homebound program, with a three-day-per-week school program divided between four hours each day in an Educably Mentally Retarded ("EMR") class at Myers High School and two hours in a Severely and Profoundly Handicapped ("SPH") class at Broadway High School.[6] His mother agreed to this place-

**1.** Jeffory Combs brings this lawsuit by and through his parent and legal guardian, Teresa Combs. References to Jeffory Combs include his mother whenever appropriate.

**2.** The Act was formerly known as the Education of the Handicapped Act ("EHA"). The name change became effective on October 1, 1990. Pub.L. 101–476, § 901(a)(1).

**3.** A "free appropriate public education" consists of:

"special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) are provided in conformity with the individualized

education program...." 20 U.S.C. § 1401(a)(18) (1988).

**4.** Jeffory was diagnosed as suffering from chronic encephalopathy.

**5.** The IDEA extends educational protection to handicapped children until the age of 21. 20 U.S.C.A. § 1412(2)(B) (West Supp.1993); Va. Code Ann. § 22.1–213 (Michie Supp.1993). Whether Combs is entitled to an award of attorneys' fees is still an active controversy even though he is now past the age at which he can claim a right to a "free appropriate public education" under the IDEA.

**6.** (J.A. at 31.) The Supervisor of Special Education for Rockingham County Public Schools, Charlotte McQuilkin, testified that the split be-

ment by signing the IEP.[7]

In February 1989, perceiving that Jeffory had an adverse reaction to the program, Ms. Combs requested a due process hearing to challenge the appropriateness of the IEP. *See* 20 U.S.C. § 1415(b)(2) (1988); 34 C.F.R. § 300.506(a) (1991); Va.Code Ann. § 22.1–214(B) (Michie Supp.1993). Among other concerns, she thought the environment at Broadway High School was too dusty and aggravated Jeffory's ear infections, that the children in his class were too disruptive, and that the school should provide more therapy and also offer assurance that a 1989 summer program would be provided to Jeffory. While Combs raised other issues at the administrative hearing, they are not relevant to this action because Combs does not claim to have prevailed on those issues.[8] It is undisputed that Ms. Combs did not notify school authorities of her specific concerns before requesting a due process hearing in February 1989. (J.A. at 492–93, 270–72, 312.)

Under the Virginia statutory scheme, Va. Code ·Ann. § 22.1–214 (Michie Supp.1993), the State Board of Education is instructed to prescribe procedures to·afford due process to handicapped children and their parents and guardians pursuant to the IDEA. In compliance, the State Board of Education passed "Regulations Governing Special Education

Programs for Handicapped Children and Youth in Virginia," which sets forth a two-tiered administrative review process. Section 3.5 of the Regulations, "Procedural Safeguards," governs hearings and appeals. That section provides that upon request, an appeal of a local school board decision is to be heard by a Hearing Officer, with further administrative appeal to the state agency, which appoints a State Review Officer.

Ms. Combs requested a due process hearing on February 27, 1989, and removed Jeffory from school in April of that year. He did not return until January 1990. Five days of administrative hearings were held in May, June, and August of 1989. Both the Hearing Officer and the State Review Officer found that the challenged 1988–1989 IEP was adequate and that the school district had provided Jeffory with a "free appropriate public education" as required by the IDEA.[9] After the proceedings and resulting administrative report, the school did make some changes in Jeffory's 1989–1990 IEP that comported with Combs' demands. These changes were not required by the administrative officers, although several were suggested in the Hearing Officer's report.

In November 1990, Combs filed this suit in district court seeking only attorneys' fees.[10]

tween the two schools was designed "to help Jeffory to make the transition from the middle school to the high school.... There was concern that he would have a difficult time making this transition from the middle school to the high school." (J.A. at 1032.)

7. Ms. Combs participated in meetings in which the IEP was developed and signed the IEP itself beneath a check mark by the statement "I do approve of the Individualized Education Program." (J.A. at 344.) Jeffory's grandmother, Betty Wine, testified at the administrative hearings that the family only agreed to the IEP because "we did not want [school officials] to feel that we were not going to work with them. We didn't agree that Jeffory needed to be there, but we thought we would try it since they felt that that was best for Jeffory." (J.A. at 600.) While Jeffory's grandmother communicated with school officials and participated in planning for Jeffory, she is not a party to this lawsuit.

8. Combs also claimed before the administrative officers: (1) that the evaluation conducted by the Medical College of Virginia violated ethical standards and IDEA rights, (2) that Jeffory was in-

correctly identified as "multi-handicapped." The hearing officer found, and the review officer concurred, that (1) "there was nothing unethical, improper or in violation of Jeffory's or his parent's rights, in the manner or method of testing conducted at the Medical College of Virginia" (J.A. at 36), and (2) that Jeffory was "most appropriately ... labeled multi-handicapped." (J.A. at 35.) Combs also claimed that the IEP was inappropriate because he was not provided a "communication board." The Hearing Officer concluded: "I specifically do not agree that the IEP was inappropriate for failing to provide a communication board ... [t]he failure to have one in place is due to the physical impairments from which Jeffory suffers ..." (J.A. at 40.)

9. The Hearing Officer's report was issued September 5, 1989, and the State Review Officer's report was issued November 6, 1989.

10. The IDEA allows parties to bring an independent action in federal court solely to recover fees incurred in an administrative proceeding. *Moore v. District of Columbia*, 907 F.2d 165, 171 (D.C.Cir.) (en banc), *cert. denied*, 498 U.S. 998,

After an evidentiary hearing, the district court held that Combs was not a "prevailing party" entitled to fees. On appeal, we review the district court's factual determination that Combs did not prevail on any significant issue for clear error. *See Child v. Spillane,* 866 F.2d 691, 694 (4th Cir.1989) (reversing award of attorney fees to a disabled child under the Rehabilitation Act because district court's finding that the child "prevailed" was clearly erroneous).

## II.

Combs contends that he prevailed on three of the issues raised before the Hearing and Review Officers. The relevant issues are (1) whether the School Board met its obligation to make summer services available to Jeffory for the summer of 1989, (2) whether Jeffory was wrongly placed in Broadway High School when his chronic ear infections were aggravated by dust due to the age of the building and construction at Broadway High School and other particularly vocal children in the SPH class upset Jeffory, and (3) whether more hours of therapy were required.

Under the fee shifting provisions of IDEA, "the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents or guardian of a child or youth with a disability who is the prevailing party." 20 U.S.C.A. § 1415(e)(4)(B) (West Supp. 1993). The term "prevailing party" connotes the same general meaning under § 1415(e)(4)(B) and 42 U.S.C. § 1988, and cases interpreting both sections apply the same principles to determine a plaintiff's entitlement to attorneys' fees. *See, e.g., Tice v. Botetourt County School Bd.,* 908 F.2d 1200, 1205 n. 4 (4th Cir.1990) (citing § 1988 principles in an EHA case); *Spillane,* 866 F.2d at 692 n. 1 (4th Cir.1989) (noting that § 1988 cases also apply to "prevailing party" issue under the Rehabilitation Act).

The Supreme Court recently examined the "prevailing party" standard in a § 1988 case decided after the district court's opinion in this litigation. The Court stated that in order to be a "prevailing party," the "plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought, or comparable relief through a consent decree or settlement." *Farrar v. Hobby,* — U.S. —, —, 113 S.Ct. 566, 573, 121 L.Ed.2d 494 (1992) (citations omitted). In *Farrar,* the Court held that the recipient of a nominal damage award might be denied an award of attorneys' fees even though he is a "prevailing party" under the statute. The Court explained that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Id.*

Both the administrative Hearing Officer, David J. Andre, and the State Review Officer, John A. Gibney, Jr., found that the School Board acted properly in its treatment of Jeffory and development of the IEP. Nonetheless, Combs argues that even though he did not receive a favorable judgment from the administrative process, the pressure of the proceeding brought about relief that followed in the form of a revised IEP for the 1989–1990 school year, and therefore he qualifies as a "prevailing party" entitled to attorneys' fees for instigating that relief. For the following reasons, we disagree.

First, Combs obtained no enforceable judgment. There was no relief through consent decree or settlement.[11] The administrative hearings foisted no enforceable obligations unto the School Board. Thus, there was no material alteration of the legal relationship between the parties in this case. Still, Combs claims to have prevailed on significant issues and therefore claims entitlement to attorney fees under a more lenient articulation of the prevailing party standard from an earlier Supreme Court case which

111 S.Ct. 556, 112 L.Ed.2d 563 (1990); *Angela L. v. Pasadena Indep. School Dist.,* 918 F.2d 1188, 1192 (5th Cir.1990).

**11.** *Farrar* has been read by some to require a *legally enforceable* judgment or settlement in or-

der for the plaintiff to recover attorney fees. *See Craig v. Gregg County,* 988 F.2d 18, 20–21 (5th Cir.1993) (noting that a legally enforceable judgment may now be required, but that the court need not decide the issue in that case).

held that a party "prevails" if he succeeds on "any significant issue in litigation which achieves some of the benefit which the parties sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (Section 1988 case) (*quoting Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir.1978)). *See also Bonnes v. Long,* 599 F.2d 1316, 1318 (4th Cir.1979) (Section 1988 case). In determining whether a plaintiff has achieved success, the Supreme Court subsequently explained that "relief need not be judicially decreed in order to justify a fee award." *Hewitt v. Helms,* 482 U.S. 755, 760, 107 S.Ct. 2672, 2675, 96 L.Ed.2d 654 (1987). Thus, absent an enforceable favorable judgment, Combs can only receive attorney fees under what has become known as the "catalyst" theory, if he can show that the process was a material contributing factor in bringing about extrajudicial relief. *Paris v. United States Dep't of Hous. & Urban Dev.,* 988 F.2d 236, 238 (1st Cir.1993) (Fair Housing Act & § 1988); *Decker v. Sullivan,* 976 F.2d 456, 458 (8th Cir.1992) (Equal Access to Justice Act); *Wheeler v. Towanda Area School Dist.,* 950 F.2d 128, 132 (3d Cir.1991) (Education of the Handicapped Act); *Webster v. Sowders,* 846 F.2d 1032, 1037 (6th Cir.1988). In determining that Combs is not entitled to recovery under any standard, we leave for en banc consideration whether fees are recoverable under a catalyst theory in the absence of an enforceable judgment, consent decree, or settlement. *See S–1 v. State Bd. of Education,* 6 F.3d 160 (4th Cir.1993) (majority opinion holding that the catalyst theory survives *Farrar;* Wilkinson, J., dissenting, arguing that it does not), *reh'g en banc granted & opinion vacated,* (Oct. 21, 1993). We only decide that Combs is not entitled to recover under the catalyst theory, if applicable in this circuit, and we demonstrate incidentally the drawbacks of the extensive analysis required by that theory.

A party seeking an award of attorneys' fees under the catalyst theory must satisfy the test outlined in *Bonnes v. Long,* 599 F.2d 1316 (4th Cir.1979):

[The] initial focus might well be on establishing the precise factual/legal condition that the fee claimant has sought to change or affect so as to gain a benefit or be relieved of a burden. With this condition taken as a benchmark, inquiry may then turn to whether as a quite practical matter the outcome, in whatever form it is realized, is one to which the plaintiff fee claimant's efforts contributed in a significant way, and which does involve an actual conferral of benefit or relief from burden when measured against the benchmark condition.

*Id.* at 1319.

We will discuss each issue on which Combs claims to have prevailed in turn. We note that in determining whether Combs has, in fact, achieved relief on any issue as a result of his efforts, we give deference to the findings of the original administrative factfinder. *Doyle v. Arlington County School Bd.,* 953 F.2d 100, 104 (4th Cir.1991). When both the original hearing officer and the state review officer agree on issues, as they did in this case, even greater deference is due. *See Burke County Bd. of Educ. v. Denton,* 895 F.2d 973, 981 (4th Cir.1990).

### A. SUMMER SERVICES

The School Board provided summer services to Jeffory for the eight years preceding the administrative hearing (1981–1988), and there was no indication that services would not be provided for the summer of 1989. Nevertheless, Combs sought assurance from the School Board beginning in November of 1988 that summer services for 1989 would be provided.

 The School Board did make an offer of summer services on June 12, 1989, which Combs rejected. The Hearing Officer, affirmed by the State Review Officer, found that Combs' refusal to accept the School Board's offer of summer school excused the School Board from offering these services, and that in any event there was no indication that summer services would not have been provided.[12] The Director of Special Edu-

---

12. Combs argues that he had the right to reject that offer under 20 U.S.C. § 1415(e)(4)(D), which says:

cation for the Rockingham County Public Schools, Charlotte McQuilkin, testified that it is typical that summer services in that District not be considered until the end of the school year so that the IEP Committee can see what sort of progress the child makes in order to determine what summer services were necessary. In fact, at trial Combs himself called expert witness Dr. Barry Hensley, a school psychologist and director of a private agency that works with handicapped children and adults, who acknowledged that the best time to determine whether summer services should be provided and what type of services are appropriate is at the end of the school year.

Summer services had been provided to Jeffory each year, with the determination of exactly what services would be provided occurring at the end of the school year, when his needs could better be determined. It cannot be said that any effort by Combs contributed to any favorable change in this benchmark condition, for there was no change. An offer of summer services was extended by the School Board near the end of the 1989 school year. That offer was rejected by Combs. It is unmistakably clear from the administrative hearing reports and the undisputed facts that Combs did not prevail on this issue.

### B. CONDITIONS AT BROADWAY HIGH SCHOOL

While the School Board, after the administrative proceedings, did place Jeffory in a new, air-conditioned classroom which was dusted and vacuumed daily and did provide a

nurse to monitor Jeffory's ear infections three times a week, none of these actions were required as a result of the administrative proceedings. These actions were taken unilaterally by the School Board and there is no indication they would not have transpired had Combs not pursued the administrative process. The benchmark condition, from which some relief was gained, was a dusty classroom which aggravated Jeffory's ear infections and a class with vocal students who upset Jeffory. However, it cannot be said that the relief "is one to which the plaintiff fee claimant's efforts contributed in a significant way." *Bonnes,* 599 F.2d at 1319.

Combs claims that school officials had sufficient notice of Combs' problems at Broadway before the due process hearing began, and therefore the only reason for the favorable changes in the 1989–1990 IEP was the administrative proceeding itself. Combs contends that the school records showed that a previous short-term placement of Jeffory at Broadway in 1986 caused problems, and that a school board employee who had once been Jeffory's teacher was familiar with those problems. Therefore, Combs argues that the School Board had notice that Combs was wrongly placed at Broadway before he initiated the administrative process. We disagree.

The School Board was not informed of Jeffory's difficulties until March of 1989, after Combs had initiated the administrative process. Although Combs did have Jeffory's doctors write letters informing the School that the classroom conditions exacerbated Jeffory's ear infections, these reports were

(D) No award of attorneys' fees and related costs may be made in any action or proceeding under this subsection for services performed subsequent to the time of a written offer of settlement to a parent or guardian, if—
 (i) ... in the case of an administrative proceeding, [the offer is made] at any time more than ten days before the proceeding begins;
 (ii) the offer is not accepted within ten days; and
 (iii) the court or administrative officer finds that the relief finally obtained by the parents or guardian is not more favorable to the parents or guardian than the offer of settlement.
In arguing that this section allowed Combs to refuse the offer of summer services without prej-

udice to later proceedings, Combs ignores the clear wording of the statute. It does not say that an entity is required to make an offer more than ten days before an administrative hearing begins. It merely provides that if an offer *is* made within that time frame, the defendant can protect itself from attorneys' fees that accrue subsequently if the plaintiff ultimately attains an award or judgment that is not more favorable than the offer of settlement. *See Marryshow v. Flynn,* 986 F.2d 689, 691 (4th Cir.1993) (explaining the analogous cost shifting provision found in Fed.R.Civ.P. 68). In no way does § 1415(e)(4)(D) shield the Combs' decision to refuse the offer of summer services made by the School Board in May 1989.

not received by the School Board until March and April of 1989. Thus, school officials had no notice of any problems nor any opportunity to address Combs' concerns before the administrative process. The School Board promptly had the Virginia Department of Health check the classroom for dust and no unusually high levels of dust or debris were found.

While it is true the school provided Jeffory a nurse during the 1989–1990 school year which he did not have before, there is no indication that they would not have provided the nurse anyway. Testimony showed that the reason the nurse was provided in 1989 and not previously was because of an increase in funding for the school that made the nurse's hiring possible. Nothing in the administrative hearing reports required hiring a nurse for Jeffory.

Moreover, Combs agreed to the 1988–1989 IEP. The School was entitled to rely on that acquiescence and the thorough evaluation by the Medical College of Virginia when it placed Combs at Broadway High School for part of the school week. Nor can the School Board, which acted promptly when it heard of the problems, be faulted for failing to make changes earlier. School boards understandably cannot make wholesale and often expensive changes without careful evaluation, and School boards cannot be expected to be clairvoyant.

It is true that the hearing officer made a recommendation that the school consider moving Jeffory to another classroom at Broadway, and that was done for the 1989–90 school year. However, the officer's recommendation was a suggestion only—the officer also noted that Jeffory went to malls, travelled, and went horseback riding without difficulty, which indicated to the officer that dusty conditions ordinarily were not particularly troublesome for Jeffory. While the school did make changes after the conclusion of the administrative hearings, Combs has failed to show that any of those changes was the result of his efforts in the administrative process.

## C. INCREASE IN THERAPY

In arguing that he "prevailed" in administrative proceedings, Combs also points out that the school increased the amount of therapy given to him in the 1989–1990 IEP formulated after the due process hearings. In the new IEP, occupational therapy was increased from between two and four times a month for one-half hour to two times a week for one-and-a-half hours. Speech therapy was increased from forty-five minutes to two hours twice weekly. Therefore, there was a benefit conferred to Jeffory: increased therapy. Again, however, Combs cannot make the causal connection between his actions in the administrative process and the result achieved that is necessary to state a valid claim for an award of attorney fees.

The only portion of Combs' due process hearing relating to therapy was his allegation that the amount of occupational therapy called for in the 1988–1989 IEP was not being delivered. The Hearing Officer and State Review Officer found that those IEP requirements were met. Having not requested additional hours of therapy in the due process hearings, Combs cannot now claim to have prevailed on this issue. He cannot show that any increase in the hours of therapy provided were the result of his efforts, or that they would not have been provided in any event.

## III.

While Combs contends that his goals of summer instruction, of a less dusty environment in which to study, and of increased therapy and nurse supervision were achieved by his pursuit of administrative remedies, the school was not ordered to make any changes in his IEP for the following year, and Combs has not shown that his actions were the catalyst for the changes. He has not shown that the School District would not have taken these actions absent his efforts. *See Spillane*, 866 F.2d at 693; *Posada v. Lamb County*, 716 F.2d 1066, 1072 (5th Cir.1983). To the contrary, every indication is that the School District would have responded to his concerns earlier had they known about them. School boards must be given adequate notice of problems if they are to remedy them, and

**364**

must be given sufficient time to respond to those problems before they can be held liable for failure to act.

In *Spillane,* we overruled a lower court's award of attorney fees to a child with AIDS who brought suit under the Rehabilitation Act. *Id.* at 694. We noted that the school would have granted the relief requested—allowing the child to attend public school—whether or not the lawsuit had been filed. *Id.* at 693. Here, too, the school district should have been given notice and the opportunity to rectify the situation before Combs brought an administrative action and subsequent lawsuit. While Combs is free to resort to administrative and judicial action, he cannot expect to recover fees and costs when his efforts contributed nothing to the final resolution of a problem that could have been achieved without resort to administrative or legal process.

Under these circumstances, it would be inappropriate for Combs to recover attorneys' fees. Allowing such an award would encourage potential litigants and their attorneys to pursue legal claims prior to attempting a simpler resolution and would discourage the school from taking any action whatsoever, particularly any favorable change in a child's IEP, once an administrative proceeding or lawsuit was underway for fear that any action on its part would give rise to a claim by the plaintiff that he prevailed and that attorneys' fees are in order. We are not prepared to disorder the careful construct of the IDEA in this manner.

We find that the School Board clearly did all that it could for Jeffory Combs, and that Combs' institution of due process proceedings did not precipitate changes that would not have taken place otherwise. Accordingly, we agree with the district court that Combs is not a "prevailing party" entitled to an award of attorneys' fees under the IDEA.

*AFFIRMED.*