**Karen TRIMPER, Plaintiff,**

v.

**CITY OF NORFOLK, VIRGINIA, et al., Defendants.**

**Civ. A. No. 2:93cv299.**

United States District Court, E.D. Virginia, Norfolk Division.

March 25, 1994.

est in the amount of $109,120.53.

Sebastian Kenneth David Graber, ACLU Foundation of Virginia, Wolftown, VA, Stephen Barkai Pershing, ACLU Foundation of Virginia, Richmond, VA, Jack Ferrebee, Sandpiper Key, Suite 11B, Virginia Beach, VA, for ·plaintiff.

Jacob Paul Stroman, IV, Office of the City Atty., Harold Phillip Juren, Deputy City Atty., Office of City Atty., Norfolk, VA, for defendants.

## OPINION AND ORDER

DOUMAR, District Judge.

Presently before the Court is plaintiff's motion for award of attorney's fees pursuant to 42 U.S.C. § 1988. The parties have submitted memoranda and have appeared before the Court for oral arguments regarding this issue. Accordingly, plaintiff's motion is ripe for consideration by the Court.

### I. *Facts*

Plaintiff brought an action pursuant to 42 U.S.C. § 1983 alleging therein that defendants violated her First Amendment rights by enforcing certain sections of the Norfolk City Code (the "Code"). The parties ultimately resolved the issues giving rise to

plaintiff's lawsuit by entering into a settlement agreement which provided that plaintiff would pay plaintiff's reasonable attorney's fees and costs arising out of the lawsuit. The Court currently must determine the reasonable amount of attorney's fees to which plaintiff is entitled under the settlement agreement and the statute.

The basic facts giving rise to the lawsuit are substantially uncontroverted. On April 15, 1992, plaintiff and other members of the Tidewater chapter of the National Organization for the Reform of Marijuana Laws (NORML), stood on the public sidewalk contiguous to the main Norfolk Post Office distributing leaflets to taxfilers. The pamphlets urged that marijuana use be legalized. Exs. A, B, C to Plaintiff's Verified Compl. There is no evidence that NORML members solicited contributions or inhibited traffic along the sidewalk.

Police officers confronted the NORML members and informed them that Chapter 3 (including Sections 3–1 [1], 3–2 [2], 3–4 [3], and 3–6 [4]) of the Code prohibited them from so distributing leaflets on Norfolk sidewalks. Fearing arrest, plaintiff and the others ceased leafletting. Plaintiff's Verified Compl. at ¶ 27.

In March, 1993, plaintiff called the Norfolk Police Department to inquire about how NORML members might distribute their materials on the sidewalk contiguous to the post office on tax day, 1993, without the threat of another confrontation with the police. Plaintiff was informed that, prior to distributing the leaflets, plaintiff must come to the police station, fill out a permit application, and submit for advance review copies of the material intended for public distribution.

On March 16, 1993, plaintiff's counsel, Sabastian Graber, initiated correspondence with Chief of Police Henry P. Henson and the City of Norfolk's Legal Department, informing them that their conduct appeared unconstitutional and asking the officials to identify which laws restricted plaintiff's right to distribute leaflets. Plaintiff's Ex. C1. The City Attorney responded by faxing to Graber Chapter 3 of the Code on March 16, 1993. Plaintiff's Ex. C2.

Upon receiving a copy of Chapter 3 of the Code, Graber discovered that it "violated virtually every fundamental principle of First Amendment jurisprudence." Graber Aff. at ¶ 21. Specifically, Graber found that: the Code exercised prior restraint of commercial and noncommercial speech by requiring a permit issued by the Chief of Police prior to leafletting; the permit was revocable at the Police Chief's discretion; and the permit application required a guarantee from the applicant that the leaflets would not be "improper." Graber Aff. at ¶ 21. On March 19, 1993, Graber informed the Chief of Police that the permit requirement as applied to plaintiff in April, 1992 and in 1993 was unconstitutional and asked whether plaintiff risked being arrested if she handed out pamphlets on April 15, 1993. Plaintiff's Ex. C3. The same day, Graber sent the City Attorney a letter stating that plaintiff intended to leaflet, that plaintiff therefore would be subject to arrest under the Code, that Chapter 3 of the Code violated the First Amendment in various ways, and that plaintiff intended to file a

---

1. Section 3–1 makes any violation of Chapter 3 of the Code a criminal offense.

2. Section 3–2 of the Code states, in relevant part: Before any circulars or advertising matter shall be distributed in the city, the party desiring to do so shall secure a permit from the chief of police and guarantee that the provisions of this chapter and other ordinances of the city will be obeyed in such distribution and that the matter to be distributed is not obscene or improper.

3. Section 3–4 of the Code provides, in relevant part: It shall be unlawful for any person to distribute ... on the streets, alleys or lanes ... [of] the city any sample, handbill, dodger, circular or other paper, advertising matter or device liable to litter the streets and premises of the city. This section shall not prohibit any person from distrusting such matter by placing the same under and inside the closed doors of any building in the city.

4. Section 3–6 of the Code states, in relevant part: It shall be unlawful for any person to distribute advertising matter, by posters, bills, samples or otherwise, by handing the same to pedestrians on the streets of the city, but this shall not prohibit the handing to pedestrians of cards of invitation to religious or educational meetings.

lawsuit against the city for enforcing Chapter 3 of the Code. Plaintiff's Ex. C4. Graber also offered a settlement: that the city issue a public statement declaring the Code unconstitutional, promise to repeal the ordinance, pay anyone who was threatened with prosecution under the Code in the April 1992 incident $250.00, and pay the attorney's fees for services rendered by Graber up to the time of the settlement. *Id.*

On March 19, 1993, the City Attorney rejected the settlement offer, stating that "I disagree that the Code sections you mention are unconstitutional, either facially or as applied," and attempted to resolve the issue by informing Graber that the city had considered plaintiff's correspondence a permit application which the city had granted. Plaintiff's Ex. C5. On March 24, 1993, Graber sent the City Attorney and the Chief of Police letters stating that the Code still violated plaintiff's constitutional rights, as the permit was valid for April 15, 1993 only and fully reserved the right of the Police Chief to revoke the permit at his discretion. Plaintiff's Exs. C6, C7. The letters inquired whether plaintiff risked arrest by leafletting on other dates and in other places than those listed in the permit, and renewed a request for the authorities to cite all laws which plaintiff would violate if she so leafletted in the future. *Id.* The letter to the City Attorney requested citations of any legal authorities which would support the constitutionality of the Code and urged the city to reconsider plaintiff's settlement offer or submit an offer of its own. Plaintiff's Ex. C6.

On March 26, 1993, the City Attorney sent Graber a letter stating that the city was reviewing a March 24, 1993 Supreme Court decision in *City of Cincinnati v. Discovery Network, Inc.,* —— U.S. ——, 113 S.Ct. 1505, 123 L.Ed.2d 99 (1993), for the potential impact it might have on the Code. The letter requested that plaintiff contact the City Attorney if she wished to leaflet in the interim so that plaintiff's request could be "accommodated." Plaintiff's Ex. C8. However, the City Attorney did not indicate that the Code might be repealed.

Unknown to Graber, on April 2, 1994, the City Attorney began the formal process to bring about the repeal of the Code, as shown by an internal memorandum. Plaintiff's Ex. C10. On April 7, 1993, after not having heard from defendants for almost two weeks, Graber filed plaintiff's lawsuit in this matter in the form of a verified complaint with exhibits and a forty-four page memorandum of law supporting plaintiff's request for a preliminary injunction. The same day, the City Attorney sent Graber a letter stating that, prior to April 2, 1993, based on the recent Supreme Court decision in *Discovery Network,* an ordinance had been drafted which would repeal all of Chapter 3 of the Code. Plaintiff's Ex. C10.[5] The letter stated that the Norfolk City Council likely would pass the ordinance at its next meeting on April 13, 1993, which would have been six days after the lawsuit was filed. *Id.* On April 14, 1993, the City Attorney informed plaintiff that Chapter 3 of the Code had been repealed. Plaintiff's Ex. C11. This was less than one month after the date of the initial correspondence from Graber to the Chief of Police of the City of Norfolk.

On April 15, 1993, Graber sent the City Attorney a letter stating that, as a result of the city's repeal of Chapter 3 of the Code, plaintiff no longer sought a preliminary or permanent injunction, but did intend to seek damages from the city. Plaintiff's Ex. C12. Graber conveyed this same information to the clerk of court on April 20, 1993. Plaintiff's Ex. C15.

On April 21, 1993, Graber faxed the City Attorney a letter which stated that plaintiff believed herself eligible for attorney's fees and costs and informed the City Attorney that a settlement at that time might limit the city's liability to $15,000. Plaintiff's Ex. C15. Following several phone conversations between Graber and the City Attorney, the City Attorney made an Offer of Judgment to Plaintiff which awarded plaintiff $100, "plus costs and expenses incurred to date, includ-

---

**5.** An internal memorandum of the City of Norfolk indicates that the formal process of repeal of

Chapter 3 of the Code began on April 2, 1993.

ing attorneys' fees, if any, as may be determined by the Court" on April 30, 1993. Plaintiff's Ex. C16. Plaintiff accepted defendant's offer on May 12, 1993.

On June 21, 1993, Graber sent the City Attorney an offer of settlement regarding the issue of plaintiff's costs, including attorney's fees. Plaintiff's Ex. C18. The offer called for Graber to receive a total of $11,880 in fees for 60 hours of his own labor at $175 per hour, eight hours of travel time at $75.00 per hour and $780 for paralegal work for 13 paralegal hours at $60 per hour; for Mr. Pershing, an attorney associated with the American Civil Liberties Union of Virginia and assisting Graber in the case, to receive $1,187.50 for 7.9 hours of labor at $125 per hour, plus compensation for 3.2 travelling hours at $62.50 per hour; and for Mr. Ferrebee, local counsel assisting Graber in the case, to receive $1,800 for 14.4 hours of labor at $125 per hour. *Id.* The offer also called for plaintiff to receive a total of $638.01 for expenses incurred by Graber and Ferrebee. *Id.* After defendants rejected plaintiff's settlement offer, plaintiff offered to reduce the amount sought by $1,000. Defendant again rejected plaintiff's offer as unreasonable.

Plaintiff now seeks the following: for Graber, $24,531.50 for 114.10 hours of labor at $215 per hour, $760 for travel at $100 per hour, $948 for 15.8 paralegal hours at $60 per hour, and $823.00 in expenses; for Ferrebee, $2,540 in total fees (billed at a rate of $125 per hour) and expenses; and for Pershing, $1,662.50 (billed at a rate of $125 per hour) and expenses. Thus, plaintiff seeks a total award of $31,265.48 for fees and expenses.

Defendants now contend that plaintiff is not entitled to recover attorney's fees in this case. Defendants contend that plaintiff obtained only limited success in her lawsuit against the city, as plaintiff won only a $100 judgment and was not responsible for the repeal of Chapter 3 of the Code. Additionally, defendants contend that the fees sought by plaintiff are unreasonably high, inadequately documented, duplicative and unnecessary. Finally, defendants claim that plaintiff should not recover any sum for preparation of the fee application because plaintiff failed to make a reasonable settlement offer concerning the award of attorney's fees.

Plaintiff contends that she is a "prevailing party," as plaintiff is responsible for the repeal of Chapter 3 of the Code and won a $100 judgment. Furthermore, plaintiff contends that the fees sought are calculated at the prevailing rate for the local market, are adequately documented and are reasonable. Plaintiff also contends that she made a reasonable settlement offer regarding her claim for fees and costs.

## II. *Analysis*

The Civil Rights Attorney's Fees Award Act of 1976, 90 Stat. 2641, as amended, 42 U.S.C. § 1988, provides, in relevant part:

In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title ..., the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

### A. *"Prevailing Party"*

The threshold issue under 42 U.S.C. § 1988 is whether plaintiff is a "prevailing party." *Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 572, 121 L.Ed.2d 494 (1992). "To qualify as a 'prevailing party,' a plaintiff need not prevail on every claim or issue raised, but only 'on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'" *Spencer v. General Elec. Co.,* 706 F.Supp. 1234, 1236 (E.D.Va.1989), *aff'd* 894 F.2d 651 (4th Cir.1990) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (other citations omitted)). Moreover, "[a] party may prevail by virtue of a voluntary action by the opposing party through settlement or a consent decree." *Child v. Spillane,* 866 F.2d 691, 692–93 (4th Cir.1989).

The "prevailing party" inquiry essentially asks whether a causal connection exists between plaintiff's litigation and the relief plaintiff has obtained. *Spencer,* 706 F.Supp. at 1236–37 (citing *Spillane,* 866 F.2d at 693). The party seeking the fees must show that the lawsuit "contributed in a significant way to the winning of benefits or

relief from the factual/legal condition that the fee claimant has sought to change." *Spillane,* 866 F.2d at 693 (citations omitted). The Court may award fees where a party's efforts have merely served as a catalyst to the beneficial result which has occurred. *Id.* Moreover, the plaintiff is a "prevailing party" where she obtains individual relief before the commencement of her lawsuit and her lawsuit leads to more broad-based relief for others. *Spencer,* 706 F.Supp. at 1237–38 (holding that, even though plaintiff was removed from hostile work environment before filing Title VII sexual discrimination suit, plaintiff was "prevailing party" as there was causal connection between the suit and company's new sexual harassment policy, which followed the suit).

■ At the very least, a plaintiff must show that:

actual relief on the merits of his claim materially alter[ed] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefit[ed] the plaintiff.

*Farrar,* —— U.S. at ——, 113 S.Ct. at 573. *See S–1 By and Through P–1 v. State Bd. of Educ.,* 6 F.3d 160, 164 (4th Cir.1993).

■ Plaintiff in this case clearly is a "prevailing party." In addition to the $100 judgment which plaintiff obtained, plaintiff's actions in writing letters and ultimately filing suit caused or contributed to the revocation of Code and thereby altered the legal relationship between plaintiff and defendants. While the Code was in effect, the city required plaintiff to provide advance notice of her intentions to leaflet and to submit copies of her leaflets for inspection by city officials. The city further required that plaintiff obtain a permit which would be valid for a limited time and place, was granted at the discretion of the Chief of Police and could be revoked at the discretion of the Chief of Police. Plaintiff's right to distribute leaflets was substantially constrained by admittedly unconstitutional procedural and substantive restrictions.

Following the Code's repeal, plaintiff faces no unconstitutional restrictions of her right to leaflet. Plaintiff no longer must provide notice of her intentions to leaflet, submit copies of her leaflets, or obtain a permit from the city. The legal relationship between plaintiff and defendant has been altered by the repeal of the Code, in that plaintiff no longer violates the law and subjects herself to arrest by leafletting without submitting the leaflets to review and obtaining a revocable permit.

Prior to and during the commencement of legal correspondence by plaintiff's counsel, the City Attorney denied that the relevant provisions of the City Code were unconstitutional. Although the city issued plaintiff a permit and promised her that she would be "accommodated" in her efforts to distribute NORML's literature, defendants and the City Attorney maintained that the City Code was constitutional and did not indicate to plaintiff that the city would repeal the statute until the plaintiff had filed her lawsuit. Thus, prior to filing her lawsuit, as far as plaintiff knew, her First Amendment rights were unconstitutionally restrained by the Code and plaintiff faced potential prosecution for violating the unconstitutional provisions of the Code even though defendants would have issued the plaintiff a permit.

Defendants counter that plaintiff's lawsuit did not cause or serve as a catalyst for the repeal of the Chapter 3 of the Code. Rather, defendants maintain that the city repealed Chapter 3 of the Code wholly in response to the United States Supreme Court's decision in *Discovery Network.* The Court finds this contention unpersuasive. Chapter 3 of the Code as applied in the present case was unconstitutional under well established Supreme Court precedent dating from as early as 1938, as it required that those persons or groups desiring to leaflet first obtain a permit and provided that the Chief of Police could revoke the permit at his own unfettered discretion. *See, e.g., Lovell v. Griffin,* 303 U.S. 444, 447–451, 58 S.Ct. 666, 667–669, 82 L.Ed. 949 (1938) (ordinance prohibiting distribution of literature of any kind and at any time, place, or manner without permit from city manager, whose discretion was unbridled, ruled unconstitutional); *Kunz v. People of State of New York,* 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951) (ordinance

prohibiting public worship meetings on the streets without first obtaining permit, the issuance of which was within the unfettered discretion of the police commissioner, held unconstitutional); *City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (ordinance giving mayor unfettered discretion to deny permit application or condition permit required to place newsrack on public property ruled unconstitutional).

The Court acknowledges that the *Discovery Network* opinion may have rendered unconstitutional certain provisions of Chapter 3 of the Code. In the *Discovery Network* opinion, the Court held that a city ordinance which prohibited racks holding "commercial handbills" but not newspapers was a content-based regulation of speech and was not "narrowly tailored" to serve the city's interest in safety and aesthetics. —— U.S. at —— ——, 113 S.Ct. at 1516–17. Accordingly, the Court struck down the ordinance as an unconstitutional restriction of the First Amendment right to free speech. *Id.* Similarly, Sections 3–4 and 3–6 of the Code prohibited the distribution of certain commercial literature while permitting other forms of literature. These sections of the Code would apparently fail the requirement that such laws be "narrowly tailored" to the state interest involved, as the distinction between commercial leaflets and leaflets advertising educational or religious organizations does not follow from the city's interest in keeping the city streets safe and clean.

However, as noted above, Section 3–2 of Chapter 3 of the Code, which concerns the permitting procedure required prior to leafletting, is the provision primarily, if not wholly responsible for plaintiff's dispute. Section 3–2 was clearly unconstitutional prior to *Discovery Network* and was unaffected by the Supreme Court's holding in *Discovery Network.* Thus, although this Court finds it plausible that the City repealed Sections 3–4, 3–6, and possibly other provisions of Chapter 3 of the Code as a result of *Discovery Network,* the Court finds that the city repealed Section 3–2 of the Code following and as a result of plaintiff's threatened lawsuit or the suit itself and not the Supreme Court's opinion in *Discovery Network.* The formal process of repeal began on April 2, 1993, or 17 days after the date of the first letter from Graber to the Chief of Police of Norfolk, and five days before the lawsuit was filed.

In short, the application of the statute to the speech context in the present case, combined with the timing of the City's repeal of the statute in relation to plaintiff's actions through Graber and plaintiff's recovery under the settlement agreement (which was to include reasonable attorney's fees), suggest that Graber's letters or the lawsuit caused or at least expedited the repeal of the Code section applicable to plaintiff's conduct. Accordingly, plaintiff is entitled to reasonable attorney's fees and costs in this case.

**B. Calculating Plaintiff's Reasonable Attorney's Fees**

■ The attorney's fees awarded by the Court should comport with the underlying purpose of the Civil Rights Attorney's fees Awards Act of 1976, which is to provide civil rights litigants effective access to the federal courts. *Buffington v. Baltimore County, Md.,* 913 F.2d 113, 129 (4th Cir.1990), *cert. denied,* 499 U.S. 906, 111 S.Ct. 1106, 113 L.Ed.2d 216 (1991) (citing *Pennsylvania v. Delaware Valley Citizen's Council,* 483 U.S. 711, 731 n. 12, 107 S.Ct. 3078, 3089 n. 12, 97 L.Ed.2d 585 (other citation omitted)).

■ Under the well settled law in the Fourth Circuit, the Court should consider the twelve factors set forth in *Johnson v. Georgia Highway Express,* 488 F.2d 714 (5th Cir.1974), to determine the reasonable fee award, although there is no strict manner in which the factors are to be considered and applied. *See E.E.O.C. v. Service News Co.,* 898 F.2d 958, 965 (4th Cir.1990). The *Johnson* factors are:

(1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in

controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Service News Co.*, 898 F.2d at 965 (citing *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 n. 28 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978)). *See Blum v. Stenson*, 465 U.S. 886, 897 n. 13, 104 S.Ct. 1541, 1548 n. 13, 79 L.Ed.2d 891 (1984).

■ Applying certain *Johnson* factors, the Court determines a reasonable hourly rate and the number of hours reasonably expended by counsel, then multiplies the rate by the hours in order to determine the "lodestar figure," which is normally considered the reasonable fee in the case. *Service News Co.*, 898 F.2d at 965 (citing *Blum*, 465 U.S. at 888, 104 S.Ct. at 1544, 79 L.Ed.2d at 896); *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50 (1983)). After multiplying this reasonable rate by the hours expended, adjustments may be made as necessary under the remaining *Johnson* factors, as the lodestar figure produce a fee which is unreasonably high or low. *Blum*, 465 U.S. at 897, 104 S.Ct. at 1548, 79 L.Ed.2d at 900.

### 1. *The Reasonable Hourly Rate*

■ The first step in setting a reasonable fee is determining the appropriate hourly rate. *Plyler*, 902 F.2d at 277 (citing *Blum*, 465 U.S. at 895–96, 104 S.Ct. at 1547–48, 79 L.Ed.2d at 900)). Specifically, the fee applicant must show that the requested rates are consistent with the "market rate," or the rate prevailing in the community for "similar services by lawyers of reasonably comparable skill, experience, and reputation," for the type of work for which the award is sought. *Blum*, 465 U.S. at 895, 104 S.Ct. at 1547, 79 L.Ed.2d at 900. Relevant to determining the "market" or reasonable rate are *Johnson* factors three, four, five, nine, and eleven.

*See Espinoza v. Hillwood Square Mut. Ass'n*, 532 F.Supp. 440, 450 (E.D.Va.1982). This Court also finds *Johnson* factors eight and ten relevant to this inquiry.

■ The third *Johnson* factor requires the Court to consider the skill required to properly perform the legal services rendered. In determining this, the Court's must find whether the case presented plaintiff's counsel with novel or complicated issues. In the present case, Graber himself has admitted, regarding Chapter 3 of the Code, that he had "*never* seen a more blatantly unconstitutional permit law. This was not a case where reasonable scholars, attorneys or jurists could disagree.... Certainly, any attorney well versed in First Amendment law could see the obvious and diverse defects [in the Code]." Graber Aff. at ¶ 26. This Court agrees. Any attorney of reasonable skill and intelligence would have identified the defects in the Code without having to perform extensive research.[6] Nor did the performance of the legal work necessary for the plaintiff to prevail in the merits phase of this litigation involve special skill, as it merely involved corresponding by letter and telephone to the city, filing a complaint and memorandum of law on basic issues of constitutional law, and accepting a settlement agreement.

The fourth *Johnson* factor requires the Court to determine the opportunity cost for plaintiff's counsel in pursuing this litigation. By his own admission, Graber usually performs his work at an hourly rate which is substantially below that which he is seeking in the present case. Graber admits that he customarily charges $150.00 or less per hour for his services in civil rights cases. Therefore, this Court finds that Graber did not forego fees of $215 per hour to provide plaintiff legal services in this case but, at most, forewent earning $150.00 per hour. This is not to say that Graber earns $150.00 per hour, but that he charges this rate if he can get it.

■ The fifth *Johnson* factor requires the Court to consider "the customary fee for

---

**6.** When law schools taught Constitutional Law, this issue would have been basic, and even the least skilled student could and probably would have recognized the issue and the solution.

like work." Plaintiff contends that the Court should apply the rate charged by experienced attorneys in complex litigation in federal court as the customary fee in this case. The Court disagrees. The Court will not mechanically apply rates which are charged by experienced attorneys in complex civil matters to determine the appropriate hourly rate to be allowed an attorney in a civil rights case. *See Buffington,* 913 F.2d at 129–30. Rather, the Court will consider various information, including "affidavits reciting the precise fees that counsel with similar qualifications have received in comparable cases; information concerning recent fee awards by courts in comparable cases; and specific evidence of counsel's actual billing practice or other evidence of the actual rates which counsel can command in the market." *Id.* at 130 (citing *Spell v. McDaniel I.,* 824 F.2d 1380, 1402 (4th Cir.1987), *cert. denied,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988)).

In this case, no novel issues arose which would be comparable with issues of complex litigation before federal courts. Therefore, this Court agrees with defendants that the affidavits submitted by Graber concerning the hourly rate applicable in this case [7] are

unhelpful at best.[8] Moreover, the Court agrees with defendants that the numerous hours Graber spent researching the issues involved in this case belie plaintiff's request for a high hourly rate. *Cf. Buffington,* 913 F.2d at 130. In *Buffington,* the Court held that two experienced attorneys representing a civil rights plaintiff were not entitled to the same hourly rate normally charged by them in complex civil matters, when the record showed that the attorneys expended many hours on research and thereby demonstrated that they did not deserve the higher fee. Accordingly, the Court found that comparable rates charged by counsel in the area for civil rights cases was more appropriate. *Id.*

The Court therefore finds more relevant to this inquiry the hourly rate charged by private law firms in Norfolk, Virginia, for representing the Commonwealth and the city in civil rights cases and the rate customarily charged by Graber in other matters. Defendants offer the affidavit of S. Bernard Goodwyn, a partner in the local law firm of Willcox & Savage,[9] who states that his firm bills the Commonwealth a rate of $75.00–$95.00 per hour in civil rights cases. Similarly, affidavits submitted by attorneys who pro-

---

**7.** Graber submits the following affidavits and exhibits regarding the "market rate" for his skills: The affidavit of Jack E. Ferrebee, which states that he has charged $125.00 per hour for the past three years, that Mr. Pershing's services are worth $125.00 per hour and that Mr. Graber's expertise entitles him to at least $250.00 per hour; the Affidavit of Stephen B. Pershing, stating that his normal billing rate is $125, based on the billing rates for fifth-year associates in Richmond; newspaper articles about Graber's involvement in various First Amendment cases; two articles from *Virginia's Lawyer Weekly* which list the fifty largest firms in Virginia and their hourly billing rates; the Affidavit of Bernard T. Holmes, an attorney in private practice in Virginia Beach, Virginia, who generally concludes that the hourly rates sought by plaintiff's counsel in this case are reasonable; the Affidavit of Jeremiah A. Denton III, am attorney in private practice in Virginia Beach, Virginia, who has represented clients in First Amendment cases and states that he received $15,000 in a "similar case" ten years ago; the affidavit of John R. Lomax, an attorney in private practice in Virginia Beach, Virginia, who states that an hourly rate of $150.00 per hour was paid to an attorney of Mr. Ferrebee's experience in this Court, and that Mr. Ferrebee's request of $125.00 per hour is therefore reasonable; the Verified Statement

of Kent Willis, the Executive Director of the American Civil Liberties Union of Virginia, who attests to Mr. Graber's knowledge and expertise in First Amendment matters.

**8.** This Court from time to time has requested attorneys to disclose the "actual fees" which they charge and collect from clients in cases before the Court. The Court is shocked by the number of times that attorneys in confidence indicate that their "usual rates" are not being charged even where the client is a recurring client. Moreover, firms which publish rates of upwards of $150.00 per hour have disclosed to the Court that they actually charge $60.00 per hour or less for the services of associates having five or more years of experience. It is sometimes forgotten that the "discounts" given by attorneys go unreported in their usual hourly rates. An attorney charging $100 per hour for a 1500 hour year would clearly earn $100,000 or more per year where costs would be ⅓ of the fees.

**9.** Willcox & Savage is one of the largest and most successful firms having offices in the City of Norfolk. In addition to its representation of the Commonwealth in civil rights cases, the firm is also noted for its representation of clients in First Amendment cases.

vide legal services for the City of Norfolk indicate that the hourly rate customarily paid for such work has ranged from $75.00–$95.00 per hour. Rashkind Aff.; Trapani Aff. Additionally, plaintiff's lead counsel admits that, when he charges clients, he charges $150.00 at the most per hour for work similar to that performed in this case.[10]

▉ The ninth *Johnson* factor requires the Court to consider counsel's experience, reputation, and ability. The Court finds that Graber is experienced in First Amendment cases and is recognized for his efforts in representing clients seeking vindication of their First Amendment rights. However, the Court finds that this case did not demand the services of an experienced First Amendment lawyer, and that Graber did not demonstrate his experience and acumen in this case. The rationale for allowing high-end fees in civil rights cases is that attorneys with experience in skill in civil rights cases will be able to avoid excess time and research on the issues. *Buffington*, 913 F.2d at 130. It therefore is inappropriate to award fees at a high-end rate where the record indicates that counsel has failed to conserve such time and research. *Id.* The present case involved a clearly unconstitutional statute and required a limited amount of legal work prior to settlement. Counsel directed the bulk of his energies toward performing many hours of research on cases—primarily on the issue of damages and attorney's fees—with which he should have possessed familiarity, and submitting unnecessarily lengthy memoranda.

The eleventh *Johnson* factor requires the Court to consider the nature and the relationship between plaintiff and her counsel in this case. Plaintiff's lead counsel was only briefly employed in pursuing the merits phase of this case, as the repeal of the stat-ute came shortly after Graber had written several letters and immediately upon the filing of a complaint and memorandum of law on behalf of plaintiff. The bulk of counsel's involvement in this case has come during the fees stage of the case.

*Johnson* factors eight and ten further indicate that Graber is not entitled to a high-end rate in this case. The amount in controversy was not substantial, as plaintiff suffered only nominal damages as a result of defendants' enforcement of the Code. Moreover, this case was not undesirable within the legal community, as there is no indication that it generated substantial negative publicity against the plaintiff or her counsel.

In short, applying the relevant *Johnson* factors compels this Court to find that the $215 hourly rate requested by Graber to be excessive.[11] The complexity of the issue involved, the skill required for the performance of the legal services in the case, the rate charged by attorneys in civil rights cases of similar complexity, the brief relationship between Graber and his client, the amount in controversy, and the non-negative nature of the case indicate that the Court should not award a rate based on that charged by experienced attorneys pursuing issues of complex federal law in federal courts. Although Graber may be experienced in civil rights cases, this case required neither the time, expertise, nor skill to warrant such a high-end fee. Rather, the Court finds that Graber is entitled to little, if any, more than the hourly rate paid experienced counsel representing the state or city in civil rights cases. Accordingly, the Court finds that the fee award in the present case shall be granted according to an hourly rate of $100.00 per hour for the hours reasonably expended by Graber while providing legal services in this case.[12]

---

10. The affidavits submitted Mr. Ferrebee and Mr. Pershing, plaintiff's other two attorneys in this case, reflect that each currently bills clients at a rate of $125.00 per hour.

11. As discussed below, plaintiff was not entitled to the services of two co-counsel in this case, and no fees will be awarded for the services provided by Mr. Ferrebee and Mr. Pershing. However, were the Court to find the hours spent by co-counsel in this case to be reasonable, the Court would not, under the *Johnson* factors, allow co-counsel to be paid at a rate of $125.00 per hour as requested.

12. As noted below, counsel will not be paid $100 per hour for time spent travelling from Wolf-town, Virginia to Norfolk. The Court below finds that Graber is entitled to no more than $40.00 per hour for such travel time.

## 2. *Hours reasonably expended*

The Court may not simply accept as reasonable the number of hours reported by counsel. *Espinoza,* 532 F.Supp. at 446 (citing *Anderson v. Morris,* 658 F.2d 246, 249 (4th Cir.1981)) (other citations omitted). The Court should not compensate plaintiff's counsel for hours which it finds "excessive, redundant or otherwise unnecessary." *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40, 51 (1983). *See Anderson,* 658 F.2d at 249; *Espinoza,* 532 F.Supp. at 446–47 (hours sought should be reduced by hours which are duplicative, unproductive, or are spent on issues on which plaintiff did not prevail). Additionally, the first and second *Johnson* factors direct the Court to consider the time actually expended by counsel and the novelty or complexity of the issues involved in the matter.

Defendants contend that plaintiff's counsel's hours are duplicative, inadequately documented, and excessive. The Court agrees and will reduce plaintiff's request to be compensated for hours that it finds duplicative, inadequately documented, and excessive.

Primary to this Court's decision to reduce the claim for fees and costs in this regard are the Court's finding that the issues involved in prosecuting the merits phase of this case were simple and did not require a substantial expenditure of time, and the Court's finding that the award should be commensurate with the degree of plaintiff's victory in this case.

The Court first finds that it would be unreasonable to award plaintiff fees for the time spent by three attorneys in this case. The process of repeal of the Code had already begun several days before the lawsuit was filed. The most one might say of the lawsuit is that it accelerated the process of repeal. The statute under which these attorneys fees are sought was intended to allow plaintiff's the ability to obtain the services of a qualified attorney. It was not intended to provide a reward but an award. It was not intended to pay any and all attorney's fees but only reasonable fees necessary to accomplish the task. The statute does not authorize an award of fees for more than one qualified attorney where the issues presented in the case are simple enough for one attorney to reasonably handle.

Plaintiff seeks a fee award for the services provided by Graber, an expert in First Amendment litigation, as well as Ferrebee, as local counsel, and Pershing, another attorney experienced in First Amendment and other civil rights litigation. This case involved neither protracted litigation in this Court nor any local court, nor presented complex issues of First Amendment or civil rights law. Moreover, the lawsuit did not achieve the result sought, but merely may have accelerated the process which had begun before the suit was filed. For these reasons, plaintiff's request for three attorneys is clearly excessive. This Court finds that this case merits a fee based on the services reasonably provided by a qualified attorney. As Graber served as lead counsel in this case and performed the bulk of legal services in this case, the Court will award plaintiff an award based on hours reasonably expended and costs reasonably incurred by Graber. The Court will not award plaintiff fees for hours logged and costs incurred by Ferrebee and Pershing or for hours and costs billed by Graber for conferring with Ferrebee and Pershing.

Defendants contend that plaintiff's counsel should not receive fees for time spent performing tasks such as faxing, copying, and organizing documents. The Court finds that the majority of such hours reported by Graber were expended by a paralegal and therefore should not be reduced as excessive. However, the Court will subtract the 2.3 hours for which Graber seeks compensation for reviewing and copying documents and exhibits as unreasonable.

Defendants also claim that the hours expended by plaintiff's counsel during the merits phase of the case were insufficiently documented. The Court finds plaintiff's request for .5 hours of Graber's time on March 11, 1993 for "calls," insufficiently documented. Accordingly, the Court will reduce plaintiff's award request by this amount. The Court finds the rest of the hours reported by Graber during the merits phase of this case adequately documented.

■ Defendants next contend that Graber's hours spent producing lengthy letters for delivery to the City Attorney and the Chief of Police were unproductive. The Court finds that, in general, Graber's letters precipitated the repeal of the Code.[13] However, the Court agrees with defendants that plaintiff should not be awarded fees for time spent producing letters to the Chief of Police after Graber had begun corresponding with the City Attorney. Accordingly, the Court disallows requests for .4 hours billed on March 19, 1993 and .6 hours billed on March 23, 1993 for this purpose.

■ Defendants also contend that the hours which Graber spent drafting, editing, and filing his lengthy motion for preliminary injunction and complaint were excessive. The Court agrees. Graber's time sheet indicates that he devoted 8.8 hours to research prior to drafting and editing his complaint and memorandum of law in support of plaintiff's motion for a preliminary injunction. Additionally, Graber spent 31.2 hours drafting and editing plaintiff's fourteen page complaint and forty-four page memorandum of law. Given the simplicity of the issue involved in this case and Graber's purported expertise in the area, plaintiff's efforts in this regard were excessive. Twenty hours is twice as much time as this Court would think that any law clerk would require to draft a succinct complaint and memorandum of law on this issue, without any information other than knowledge of the problem. However, the Court will grant plaintiff twenty hours for drafting and editing the complaint and memorandum of law in support of plaintiff's motion for a preliminary injunction. The Court will reduce plaintiff's fee request for hours spent drafting and editing plaintiff's complaint and legal memorandum by 11.2 hours.

■ Defendants next claim that plaintiff's lead counsel allocated excessive hours to "client consults." The Court agrees. During the merits phase of this case, Graber conferred with his client on at least fifteen different occasions, resulting in at least 4.9 hours billed for this purpose. Graber's time sheet reflects that the initial contact with the client consumed only .3 hours of Graber's time. The facts giving rise to this suit are simple and should have not have required continuous contact with the client. Accordingly, the Court will reduce plaintiff's request for hours spent by counsel in communicating with plaintiff by one-half, or 2.45 hours.

■ Defendants next contend that plaintiff's counsel devoted an inordinate amount of time and expense seeking attorneys fees in this case and failed to make a reasonable settlement offer for plaintiff's claim for fees and costs. The Court agrees.

■ Although this Court acknowledges that a prevailing party is eligible for reasonable attorney's fees for the time spent formulating the fee request, this Court finds that plaintiff's attorney in this case spent an inordinate amount of time on the fee issue, and such hours should be substantially reduced. *See Service News Co.*, 898 F.2d at 966. The prevailing party in a civil rights suit is under a duty to minimize the cost of vindicating his rights. *Espinoza*, 532 F.Supp. at 448. The prevailing party should not be awarded the cost of seeking attorneys fees where it appears that plaintiff has not made sufficient effort to minimize the cost of seeking said fees. In fact, this Court finds that Graber maximized his efforts rather than minimizing them.

Plaintiff spared no expense in seeking attorneys fees. Although the formal process of repeal began on April 2, 1993, it was on or shortly after April 7, 1993 that the plaintiff learned that the Code would be repealed. Thus, plaintiff had knowledge that she had achieved the success for which she is primarily eligible for fees on or shortly after April 7, 1993. In fact, Graber's time sheets reflect that he devoted his efforts on and following April 9, 1993 pursuing damages (which were nominal), fees and costs arising out of the lawsuit.

---

13. The Court finds that the City Attorney did on April 2, 1993 forward the draft of an ordinance repealing Chapter 3 of the Code, which was subsequently enacted by the City Council. The Court finds that the filing of plaintiff's suit on April 7 probably accelerated the process of repeal and therefore perhaps contributed to it.

Plaintiff incurred far more fees and costs seeking fees and costs than in obtaining the repeal of the Code. Graber's timesheets reported approximately 66.7 hours spent researching, drafting, and editing documents in support of plaintiff's efforts to overturn the unconstitutional provisions of the Code. By contrast, the timesheets report that Graber spent in excess of 150 hours seeking fees and costs for plaintiff, though plaintiff only seeks fees for 48.9 of those hours. This Court finds that, by either measure, plaintiff's efforts to obtain damages, fees, and costs are clearly excessive and disproportionate to the relief she obtained against defendants.

In *Service News Co.*, the court found plaintiff's request for fees spent seeking attorney's fees during the merits of plaintiff's lawsuit excessive, where plaintiff's efforts in claiming the fees and costs represented over twenty percent of the total time claimed in the case. 898 F.2d at 965–66. The court based its finding on the fact that the case involved no novel or difficult legal questions, required primarily telephone calls and letters of counsel, and was simultaneously being litigated by the EEOC.

Similarly, the present case involved no novel or difficult legal questions and required only telephone calls and letters for the resolution of the parties' dispute. While the complaint and memorandum of law submitted by plaintiff contributed to plaintiff's success during the merits phase of this litigation by accelerating the repeal, the hours spent producing those documents were excessive. Plaintiff's success came without any real litigation and the damages she sustained as a result of the enforcement of the statute were nominal.

In comparison, the time spent by Graber in seeking fees was immoderate. In addition to the many hours spent researching municipal liability and the issue of attorney's fees, Graber spent many hours producing a twenty-seven page memorandum of law in support of plaintiff's motion for fees and costs and a forty-six page reply memorandum in support of plaintiff's motion for fees and costs. The Court finds these verbose memoranda only marginally helpful. In comparison to the time expended in their production, the Court finds these memoranda, as well as Graber's other efforts in seeking attorney's fees, extremely unproductive.

Moreover, plaintiff's settlement offer was unreasonable. On July 7, 1993, plaintiff offered to settle her claim for attorney's fees and costs for $15,505.51, based on an hourly rate of $175.00. During subsequent negotiations, plaintiff offered to reduce this amount by only $1,000. The Court finds both the hourly rate sought by plaintiff and the number of hours claimed in plaintiff's settlement offer unreasonable in light of the *Johnson* factors.

For the above reasons, the Court finds that plaintiff is entitled to only a fraction of the amount she claims for fees an costs incurred while litigating the issue of attorney's fees and costs. Applying the useful benchmark articulated by the court in *Service News Co.* to the facts of this case, this Court finds that plaintiff is not entitled to an award of fees for that portion of Graber's work in seeking damages, fees, and costs which exceeds twenty percent of the time which Graber reasonably expended in seeking the repeal of Chapter 3 of the Code.

The Court finds that plaintiff is entitled to costs reasonably incurred by Graber. Although local counsel would not have incurred travel costs, the Court will allow fees paid for Graber's travel to and from Norfolk, albeit at this Court's standard rate for out-of-court time paid to appointed counsel, which is $40.00 per hour. Additionally, the Court will award plaintiff costs associated with the merits portion of this case but excluding the cost of calls from Graber to his co-counsel in this case.[14] Costs incurred by Graber in his efforts to obtain fees and costs in this case shall not be awarded in an amount which exceeds twenty percent of the costs allowed for the merits portion of this lawsuit.

Accordingly, the Court finds defendants liable to the plaintiff for the following fees and costs: $4,015.00 for 40.15 hours expended by Graber during the merits phase of this

---

14. Most of Graber's calls to Pershing and Ferrebee are reflected as calls to "aclu" and "jf," respectively, on the phone record submitted by Graber.

case billed at a rate of $100.00 per hour; $33.00 for 1.1 paralegal hours expended during the merits phase of this case and billed at $30.00 per hour; $31.53 for phone charges incurred by Graber during the merits phase of this case;[15] and $304.00 for 7.6 hours in travel to and from Wolftown, Virginia to Norfolk, Virginia, at a rate of $40.00 per hour during the merits phase of this case, for a total of $4383.53 in fees and costs incurred during the merits phase of this case. Additionally, plaintiff is entitled to $876.71 in fees and costs incurred during plaintiff's efforts to obtain her fees and costs, which amount equals twenty percent of the fees and costs awarded for the merits phase of the case. In sum, plaintiff's request for award of attorney's fees is GRANTED in part and defendant is liable to plaintiff for $5260.24 for fees and costs arising out of plaintiff's successful lawsuit. This Court finds as a fact that any amount in excess of the total sum of $5,260.24 in fees and costs is excessive, unwarranted and unreasonable. Plaintiff's request for an award for any amount in excess of $5,260.24 for fees and costs is DENIED accordingly.

### III. *Conclusion*

For the reasons stated above, plaintiff's motion for award of attorney's fees and costs is GRANTED in part and DENIED in part. Defendants are hereby ORDERED to pay plaintiff her fees and costs reasonably incurred, which amount this Court finds to be $5,260.24. This award is separate from and shall be paid in addition to the $100 judgment for which the parties have agreed defendants are liable.

The clerk is DIRECTED to send copies of this Order to counsel for plaintiff and for defendants.

IT IS SO ORDERED.

---

15. Graber reports phone charges in the amount of $163.78 between the dates of June 2, 1992 and April 8, 1993. However, this Court finds that $132.25 of the charges were insufficiently documented or incurred for purposes for which this Court has held plaintiff was not entitled to fees or costs. The Court denies plaintiff's requests for fax and copying costs as these costs are inadequately documented.